Deadebick, J.,
delivered the opinion of the Court.
This is a case of a contested nuncupative will, brought up by appeal in error to this Court from the Circuit Court of Warren County.
A. McDaniel died at his home on the night of the 8th of January, 1863. A few hours before his death, D. F. Woods, in the presence of Thomas Muzzy and J. W. Miller, told deceased that he was very sick and could live but a short time. McDaniel said he knew he was very bad. Woods then asked him if he had any request to *112 make, or any disposition of bis property, if so, he ought to make it. McDaniel then said, “that he wanted his two children, Minton Thurman and Sally Thurman, to have his place, and made equal with his other children.” The deceased never spoke after this declaration was made, and died in three or four hours.
On the 12th day of January, 1863, the declarations of deceased, as above given, were reduced to writing by D. F. Moods, and sworn to by him and Thomas Muzzy before G. M. Martin, a Justice of the Peace of Marren county, on the same day.
At the next succeeding April Term of the County Court of Marren county, the paper drawn up by Moods as the nuncupative will of the deceased, was offered for probate, and the declarations as set out in the papers proved by Moods, Muzzy and J. M. Miller, the three witnesses who were present when they were made by deceased.
Plaintiffs in error appeared in the County Court and contested the validity of the alleged will, whereupon the fact was certified to the Circuit Court of said county, together with the • paper writing propounded for probate as the nuncupative will of Abram McDaniel, deceased.
An issue of devisavit vel non was made up in the Circuit Court, and this issue was tried by a jury of Marren county, at the June Term, 1867, of the Circuit Court, resulting in a verdict establishing the will.
D. F. Moods, Thomas Muzzy and J. M. Miller, upon the trial of the case, proved that deceased died January 8, 1863, at his own house in Marren county, where he had resided for several years; that he was very sick, and suf *113 fering at the time great bodily pain; that three or four hours before his death, D. E. Woods approached his bedside, and told deceased that he was very sick, and that he could live but a short time. Deceased replied that he knew he was very bad. Woods testifies that he then told him if he had any request to make, or wanted to make any disposition of his property, he ought to make it. McDaniel then said he wanted Wint. and Sis, (meaning, as they understood him, Winter Thurman and Sally Thurman, the defendants in error,) to have his land, and enough to make them equal with the rest of his children.
Thomas Muzzy stated on the trial, that deceased said “that he wanted the Thurman’s to have that land, and enough of his' other property to be made equal with the rest of his heirs.”
J. W. Miller testified on the trial, that deceased said “ he wanted them, the Thurman children, Wint. and Sis., to have his land, and enough of his other property, to make them equal with his other children.”
The Thurmans were the illegitimate children of deceased, and Smith’s wife was his legitimate child.
All three of these witnesses, four days after the death of McDaniel, swore to the paper presented for probate, and upon which the issue in this case was made up, as containing the declaration of McDaniel.
By our statute, which is a substantial copy of the statute of 29 Car., 2, for the prevention of frauds and perjuries, it is indispensably requisite to the validity of a nuncupative will, that the will be proved by two disinterested witnesses, present at the time of making thereof, and they, or some of them, must be especially re *114 quired to bear witness thereto by the testator himself. Code, 2165.
It has been held by this Court, that it is a sufficient compliance with that part of the statute which requires that the witnesses, or some of them, shall be. especially required to bear witness thereto by the testator himselfj if he, by intelligent act and language, invoke their special attention to what he has said, or is about to say. 4 Hum., 342. In that case, the testator, addressing the witnesses, said, “I wish to make a disposition of my effects,” and then went on to declare the nuncupation, and explained to the witnesses the motives for making the particular disposition of his property. And this was properly held a valid nuncupative will, as complying with the statute requiring that the testator should especially require witnesses present, or some of them, to bear witness thereto, and as also clearly evincing an intention to perform a testamentary act.
In the case in 8 Hum., 645, 6., the Court says: “We have no desire or intention to go further in extending the meaning of the words, ‘specially required to bear witness thereto./ than has been done in the case of Baker v. Dodson,” 4 Hum., 342.
In a still later case, this Court held that it is indispensable to a valid nuncupative will, that the testator should especially call the witnesses to the fact; and while 'it is not necessary to use the precise language of the statute, words of equivalent import should be used, showing that testator considered himself engaged in a testamentary act. 2 Cold., 30.
The provisions of the .statute in regard to nuncupa- *115 tive wills have been strictly enforced by the courts; and they have generally adopted a rigid and strict construction in regard to them. It must appear that all the requirements of the law have been complied with.
Independent of the statute of frauds, the factum of a nuncupative will requires to be proved by more strict evidence than a written one. The testamentary capacity, the animus testandi, and the rogatio testium, at the time of the alleged nuncupation, must appear by the clearest and most indisputable testimony. Red. on Wills, part 1, 187, 8; 1 Wms. on Exrs., 105.
Tested by these rules of law, and by the rules laid down for their construction, can it be said that the paper propounded and upon which the issue in this case has been made, can be held to express the nuncupative will of the deceased?
We think not, for several reasons.
The leading object of that part of our statute which requires that the witnesses, or some of them, shall be especially required to bear witness thereto by the testator himself, is to distinguish between a valid nuncupation and casual conversations by one in his illness as to his wishes on the subject of his property, and to guard against the latter being imposed upon the Court as testamentary. 4 Hum., 344.
In all the cases in our books of reports, in which nuncupative wills have been sustained, the testator unmistakably indicated his purpose of performing a testamentary act.
But in this case the expression that he “wanted his two children, Winton and Sally Thurman, to have his *116 place, and made equal with his other children,” in view of the fact that he had theretofore conveyed “his place” to them by deed, may as reasonably be construed as the expression of his satisfaction with the provision he had already made for them, as that he thereby intended to make any further provision for them by a testamentary act which he understood himself as then performing.
At all events, there is not that full and satisfactory evidence of the animus testandi required by law, nor that clear and indisputable testimony of the calling upon the witnesses by the testator to bear witness to the fact of making a will, which is required by law to establish a nuncupative will.
But in the view we have taken of this case, if the law had been complied with in all other respects, this supposed nuncupative will, as reduced to writing and proved in the County Court, could not be established as a will, because it purports to devise land and nothing else.
"We hold, therefore, that the judgment of the Circuit Court was erroneous.
Let the judgment of the court below be reversed, and he cause remanded for a new trial.